UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WALTER E. HELGOTH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 4:09-CV-1880 (CEJ) |
| ) | |
| STEVE LARKINS, et al, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiffs have not responded and the time allowed for doing so has expired.

This action arises out of a drug test administered to plaintiff Walter Helgoth at the Eastern Reception Diagnostic and Correctional Center ("ERDCC"), where Helgoth was an inmate at the time. Helgoth was unable to produce a sufficient amount of urine to complete the drug test within the two-hour time limit allowed by ERDCC policy. Consequently, Helgoth was placed in administrative segregation for a term of ten months. Helgoth alleges that he was unable to complete the urine test due to his age and physical ailments. He brings a claim under 42 U.S.C. § 1983, asserting violation of his "right to receive a fair grievance," age discrimination, disparate treatment, deprivation of his "right to petition the government for a redress of grievances under the First Amendment", and a due process violation. Plaintiff Maria Rubin, Helgoth's daughter, makes a filial consortium claim arising from her inability to have contact visits with her father

while he was in administrative segregation. Plaintiffs seek a finding that the department's drug testing policy is unconstitutionally vague and overbroad.

I. Background

For purposes of the motion to dismiss under Rule 12(b)(6), the Court assumes the following factual allegations of the complaint to be true:

On May 21, 2008, plaintiff was awakened at 1:30 a.m. by a correctional officer at ERDCC, who informed plaintiff that he had two hours to complete a urine test pursuant to departmental policy.[1] Helgoth was 71 years old at the time and suffered from diabetes, high blood pressure, decreased kidney function and an enlarged prostate which inhibits urination. In his eighteen years of incarceration, Helgoth had never tested positive for illegal drugs.

Helgoth attempted to complete the drug test but was physically unable to do so because he had taken diuretic medication and had urinated immediately before going to bed. Helgoth told the correctional officer that he had medical problems that prevented him from complying with the drug test. Helgoth also told the correctional officer that he had taken diuretic medication that allowed him to flush out his kidneys just hours earlier. Helgoth requested that he be placed in a "dry cell" during the drug test, but the request was denied. Instead, the urine test was administered in his cell, with his cellmate in close proximity. Helgoth also states that ERDCC staff members remained present during the test, which caused him embarrassment and humiliation.

---

[1] Departmental Policy D57.1 states that all offenders may, at anytime, be required to submit to a urine, saliva, hair or sweat specimen for drug testing.

At 3:40 a.m., after the two-hour time limit had expired, the correctional officer issued Helgoth a conduct violation for "Failure to Follow an Order" and "Refusal to Submit to the [drug] Test." Defendant Richard Gerrish, the Disciplinary Hearing Officer, found Helgoth guilty of the violations. Defendant Gerrish ordered that Helgoth be placed in administrative segregation. Defendant Gerrish told Helgoth that the warden, defendant Steve Larkins, would have overturned any other verdict.

Helgoth was placed in administrative segregation on May 28, 2008. Helgoth was not allowed any contact visits with his family. Plaintiffs believe that the contact visit prohibition implies that Helgoth's only frequent visitor, plaintiff Maria Rubin, was the cause of Helgoth's failed urine test.[2] Helgoth remained in administrative segregation for ten months. During this time period, Helgoth was transferred to the Southeastern Correctional Center.

In addition to Larkins and Gerrish, other defendants include George Lombardi, the director of the Missouri Department of Corrections, and Patricia Cornell, the individual who allegedly made the final decision to deny Helgoth's grievance.

II. <u>Legal Standard</u>

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff,

---

[2]Although Helgoth did not technically fail the urine test, his inability/refusal to take the test in the allotted time is treated the same by ERDCC as a dirty urine determination. Helgoth alleges that the punishment for refusing to take the test is the same, or even in excess, of the punishment for a failed test.

-3-

"even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### III. Discussion

Plaintiffs' first claim is that defendants violated Helgoth's right to receive a fair grievance. There is no explanation within the complaint as to what this conclusory allegation refers.[3] The complaint merely states that Helgoth filed an "IRR. Grievance and Grievance Appeal" and that they were denied. Plaintiffs' disagreement with the outcome of the grievance does not state a claim for relief under § 1983. In the complaint, plaintiffs also allege that Angela Chandler, a hospital administrator, failed to provide adequate information to defendants

---

[3]In their memorandum accompanying this motion, defendants also expressed confusion by the lack of details surrounding this allegation. Plaintiffs had an opportunity to clarify their allegations by responding to defendants' motion, but they did not do so.

during the grievance process. Ms. Chandler, however, is no longer a defendant in this matter. Thus, plaintiffs' allegations of an unfair grievance fail to state a claim.

Plaintiffs' second claim is that Helgoth was discriminated against on the basis of age. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Conner, 490 U.S. 386, 393-94 (1989). Plaintiffs do not cite any federal statute which protects the right they are seeking to vindicate through this §1983 claim. While 29 U.S.C. § 621 prohibits discrimination on the basis of age, it applies only to employment discrimination, which is not at issue in this matter. For these reasons, plaintiffs fail to state a claim for age discrimination.

Plaintiffs' claim fails even if construed as a claim for denial of equal protection under the Fourteenth Amendment. "[A]ge is not a suspect classification under the Equal Protection Clause". Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000). Thus, the issue becomes whether the difference in treatment is "rationally related to a legitimate state interest". Id.

The policy at issue here treats all inmates---regardless of age---equally. All inmates have two hours to complete the test. Assuming that plaintiffs are correct in their assertion that this two hour time limit, as applied, discriminates against older inmates, the Court finds that the policy is rationally related to a legitimate governmental interest. There are several reasons that a drug test requires the urine sample to be taken within a short period of time. First, the urine sample must be obtained before any illegal substances are metabolized by the body.

-5-

Additionally, prison officials are required to personally observe the inmate during the test, to ensure that the test is performed properly. If inmates were given an unlimited amount of time to produce a urine sample, prison officials would have less time to perform other work. Thus, the policy not only ensures accurate results, but also conserves prison resources. Finally, if an exception were made for older inmates, they may become more willing to use controlled substances, safe in the knowledge that they can delay a test until the drugs are no longer traceable. For these reasons, Helgoth's claim that the drug testing policy is unlawfully discriminatory will be dismissed.

Helgoth asserts a claim of disparate treatment between himself and other prisoners and staff members. First, Helgoth claims that the drug testing standards for inmates are different than those standards for testing staff members.[4] Second, Helgoth claims that his punishment was harsher than the punishment for those offenders who test positive for illegal drugs.

"Disparate treatment constitutes discrimination only if the objects of the disparate treatment are, for the relevant purposes, similarly situated." United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority, 550 U.S. 330, 348 (2007). As a prisoner, Helgoth is not similarly situated to the staff members who have less restrictive drug testing standards. "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

---

[4]Helgoth notes that staff members at the ERDCC are also subject to drug tests, but are given three hours to provide a urine sample, are allowed more water to drink than prisoners are, and are allowed to provide the urine sample unobserved.

Likewise, Helgoth is not similarly situated to the inmates who test positive for illegal drugs. The two offenses are separate and the punishments for those offenses are not required to be identical. Even if Helgoth were similarly situated to the other inmates, there is a rational basis for treating inmates who refuse or fail to provide a sample differently (and even more harshly) than those who provide a dirty sample. The ERDCC has a strong interest in preventing the illegal use of controlled substances in its facility. By performing drug tests and obtaining dirty samples, ERDCC is able to determine the types of substances that are making their way into the facility and to investigate their use. An inmate's failure or refusal to comply with the drug test, prevents ERDCC from determining the type of drugs that are being used illegally and from identifying the potential source. Therefore, it is in the ERDCC's interest to encourage inmates to comply with the test---even when a positive test result is likely. If the potential punishment for refusing a urine test were equally or less severe than that for testing positive, offenders would have little to no incentive to submit to the urine test. Therefore, even if Helgoth were similarly situated to the other inmates who failed a drug test, there is a rational basis and a legitimate state interest for an increased punishment for those who did not complete the test.

Next, Helgoth claims "a violation done with the purpose and intent of depriving plaintiff of his right to petition the government for a redress of grievances under the First Amendment." The complaint fails to allege how Helgoth's right to petition the government for a redress of grievances was violated

by any of the defendants. Indeed, plaintiffs provide nothing more than a legal conclusion to support this claim. Accordingly, this count also fails to state a claim.

Helgoth's next claim is that he was deprived of liberty without due process. Again, Helgoth fails to support his claim with any factual allegations. Here, it is unclear what process he believes he should have been afforded. Helgoth admits that he was given a hearing and that he filed a grievance and grievance appeal. Instead, it appears that Helgoth is simply unhappy with the decision reached at the conclusion of the hearing. Helgoth fails to show that he was denied due process prior to being placed in administrative segregation.

Plaintiff Maria Rubin makes a claim for loss of filial consortium while her father was in administrative segregation. Plaintiffs have not cited, and the Court could not find any legal support for a claim for the loss of visitation privileges when an inmate is constitutionally imprisoned. As discussed above, plaintiffs have failed to show that Helgoth's placement in administrative segregation violated any federal statute or constitutional provision. A claim for loss of filial consortium cannot stand under such circumstances.

Plaintiffs also ask that the Court examine the constitutionality of the ERDCC's drug testing policy. That request is moot, as Helgoth is no longer in custody at the ERDCC. A request for declaratory relief is moot unless "there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969). Because Helgoth is no longer incarcerated at ERDCC,

he is no longer subject to its drug testing policy. Therefore, plaintiffs' request for declaratory relief is moot.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. #13] is **granted**.

```
                                 _____
                                 CAROL E. JACKSON
                                 UNITED STATES DISTRICT JUDGE
```

Dated this 12th day of May, 2010.